1  Michael Gerard Fletcher (State Bar No. 70849)
      mfletcher@frandzel.com
2  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard, Seventeenth Floor
3  Los Angeles, California 90048-4920
   Telephone: (323) 852-1000
4  Facsimile: (323) 651-2577

5  Attorneys for Plaintiff BANK SINOPAC LOS
   ANGELES BRANCH

6

7              **UNITED STATES BANKRUPTCY COURT**

8               **CENTRAL DISTRICT OF CALIFORNIA**

9                   **LOS ANGELES DIVISION**

10 | In re | Case No. 2:14-bk-27223-TD |

11 | ATHERTON FINANCIAL BUILDING LLC, a California limited liability company, | Chapter 11 |

12

13 |   Debtor. |

14 | BANK SINOPAC LOS ANGELES BRANCH, | Adv. No. |

15 |   Plaintiff, | **BANK SINOPAC LOS ANGELES BRANCH'S COMPLAINT FOR:** |

16

17 | v. |

18 | ATHERTON FINANCIAL BUILDING LLC, a California limited liability company; LUCY GAO, an individual; BENJAMIN KIRK, an individual; SUNSHINE VALLEY, LLC, a California limited liability company; GREAT VISTA REAL ESTATE INVESTMENT CORPORATION, a California corporation; AMERICAN REO SOLUTIONS LLC, a Delaware limited liability company; WASHINGTON CAPITAL MANAGEMENT SERVICES LLC, a Delaware limited liability company; and PA ONE, LLC, a California limited liability company, |

1.  **Declaratory Relief**

2.  **Declaratory Relief**

3.  **Declaratory Relief**

4.  **Declaratory Relief**

5.  **Declaratory Relief**

6.  **Injunctive Relief**

25 |   Defendants. |

26

27

28

1777867.3 | 100158-0032                              1

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Plaintiff Bank SinoPac Los Angeles Branch ("<u>Bank</u>") complains and alleges against the Defendants, and each of them, as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Federal Rule of Bankruptcy Procedure 7001(1), (2), (7), and (9), and has exclusive jurisdiction over the approximately $3.5 million that is property of the estate ("<u>Fund</u>") that is also at issue in this adversary proceeding, pursuant to 11 U.S.C. § 541 and 28 U.S.C. § 1334(e).  This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

2.      The Bank is a bank organized and existing under the laws of the Republic of China (Taiwan) and qualified and authorized to conduct business in the State of California as a bank.

3.      The Bank is informed and believes and thereon alleges that defendant Atherton Financial Building LLC ("<u>Atherton</u>") is the holder of the Fund at issue herein, is the debtor and debtor-in-possession in this bankruptcy proceeding ("<u>Debtor</u>"), and is a limited liability company organized and existing under the laws of the State of California.

4.      The Bank is informed and believes and thereon alleges that defendant Lucy Gao ("<u>Gao</u>") is, among other things, an individual who resides in Los Angeles County, California, who asserts a claim to some portion of the Fund at issue.

5.      The Bank is informed and believes and thereon alleges that defendant Benjamin Kirk ("<u>Kirk</u>") is, among other things, an individual who resides in Los Angeles County, California, who claims to be the Managing Member of the Debtor's Manager, who asserts a claim to some portion of the Fund at issue, and who asserts that he is the true owner of Debtor Atherton.

6.      The Bank is informed and believes and thereon alleges that defendant Sunshine Valley, LLC ("<u>Sunshine</u>"), is a limited liability company organized and existing under the laws of the State of California, which claims to be one of the interest holders in Debtor Atherton, claims to be the managing member of Debtor Atherton, and is a claimant to the Fund at issue herein.

7.      The Bank is informed and believes and thereon alleges that defendant Great Vista Real

Estate Investment Corporation ("Great Vista") is a corporation organized and existing under the laws of the State of California, which claims to be one of the interest holders in Debtor Atherton, and is a claimant to the Fund at issue herein.

8.     The Bank is informed and believes and thereon alleges that defendants American REO Solutions LLC ("American REO") and Washington Capital Management LLC ("Washington Capital") are limited liability companies organized and existing under the laws of the State of Delaware and qualified and authorized to conduct business in the State of California, which each claim to be interest holders in Debtor Atherton, and are claimants to the Fund at issue herein.

9.     The Bank is informed and believes and thereon alleges that defendant PA One LLC ("PA One") is a limited liability company organized and existing under the laws of the State of California, that claims to be entitled to have some portion of the Fund at issue herein transferred to it by some or all of the other defendants.

**GENERAL ALLEGATIONS**

10.    Atherton filed its chapter 11 petition ("Petition") on September 9, 2014 ("Petition Date"), thereby commencing this bankruptcy case. Atherton's bankruptcy petition was signed by Kirk as the "Managing Member of Manager Sunshine Valley LLC." [ECF Doc. No. 1.]

11.    Atherton's List of Equity Security Holders, filed with the Petition and also signed by Kirk, listed Great Vista holding a 40 percent membership interest in Atherton, and listed American REO, Sunshine Valley, and Washington Capital each holding 20 percent membership interests in Atherton. A true and correct copy of Atherton's List of Equity Security Holders is attached hereto as Exhibit 1 and incorporated herein by reference. [ECF Doc. No. 1.]

12.    Atherton's Schedules of Assets and Liabilities, filed September 23, 2014, listed (i) Atherton holding a fee simple interest in the real property located at 1906 El Camino Real, Menlo Park, California 94027 ("Debtor's Real Property"); and (ii) the Bank holding a $2,715,985.00 undisputed claim secured by a first-priority lien against the Debtor's Real Property. [ECF Doc. No. 13.]

13.    On December 4, 2014, the Court entered its order approving Atherton's sale of the Debtor's Real Property for $14.3 million, free and clear of the Bank's lien. [ECF Doc. No. 46.]

FRANZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**Motion to Dismiss Bankruptcy Case**

14.    On December 24, 2014, Atherton filed in this bankruptcy case a Motion for Order (1) Authorizing Disbursement of Funds to Creditors; and (2) Dismissal of Bankruptcy Case ("Dismissal Motion"). The Dismissal Motion represented that Atherton's bankruptcy counsel is holding over $3.5 million in its client trust account—representing the net remaining proceeds from sale of the Debtor's Real Property—pending further order of the Court (defined herein as the "Fund"). The Dismissal Motion also represented that remaining claims against the Debtor's estate then totaled $246,922.53, exclusive of Atherton's bankruptcy counsel's unpaid fees and costs. The Dismissal Motion thus sought authority to pay all estate claims in full and dismiss the bankruptcy case. [ECF Doc. No. 50.]

15.    Gao filed a Limited Opposition to the Dismissal Motion on January 5, 2015, asserting that she owns 100 percent of the membership interests of Atherton and opposing the Dismissal Motion insofar as Atherton "seeks to disburse funds in excess of [monies paid to] undisputed claims to any party other than" Gao. Gao asserted that such funds should be "interplead [sic], or otherwise sequestered by agreement of the parties, until any disputes regarding such funds are resolved." Gao's declaration in support of her Limited Opposition attaches an Operating Agreement of Atherton dated April 13, 2012, which (on Schedule A) identifies Gao as Atherton sole Member. [ECF Doc. No. 53.]

16.    Atherton's Reply in Support of the Dismissal Motion generally disputed Gao's assertions regarding her ownership of Atherton, but failed to provide any information to resolve the Atherton ownership dispute, asserting instead only that such dispute "is irrelevant for determination of the Motion since the Debtor does not seek to disburse funds to equity holders." [ECF Doc. No. 54.]

17.    On January 21, 2015, the Court entered an Order granting the Dismissal Motion in part. The Order authorized Atherton to distribute funds held in bankruptcy counsel's client trust account to its undisputed creditors with claims as set forth in the Motion, and to release $50,000 to Atherton's bankruptcy counsel "to fund a retainer for an anticipated bankruptcy case for the Debtor's affiliate." The Order does not identify the affiliate. Other than the foregoing approved disbursements, the Order required the balance of the Fund to continue to be held in Debtor's counsel's client trust account, to be disbursed only upon further Court order. The Order further continued the hearing on dismissal of Atherton's bankruptcy case for subsequent resolution. [ECF Doc. No. 60.]

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1

### Gao Adversary Proceeding

2      18.     On January 20, 2015, Gao commenced an adversary proceeding against the Debtor

3   entitled Gao v. Atherton Financial Building, LLC, which was assigned case number 2:15-ap-01024-

4   TD by this Court ("Gao Adversary Proceeding").  In her Complaint, Gao alleges that she is the "true

5   sole owner" of Atherton's membership interests and further alleges that "the Estate Funds must be

6   transferred to an account owned or controlled by Ms. [G]ao."  Accordingly, Gao in her Complaint

7   seeks (i) a declaratory judgment that Atherton's remaining Fund must be transferred to an account

8   owned or controlled by Gao; (ii) interpleader of such Fund into the Court by Atherton until the Gao

9   Adversary Proceeding can be adjudicated or otherwise resolved; and (iii) injunctive relief enjoining

10  the Debtor from transferring such Fund.  As of March 9, 2015, the Adversary Complaint had not yet

11  been served on Atherton.  Accordingly, Atherton has not answered the Complaint or otherwise

12  appeared in the Gao Adversary Proceeding.

### Stipulation Between Atherton and Gao

14     19.     Notwithstanding the foregoing, on or about March 6, 2015, Atherton and Gao entered

15  into and filed a Stipulation Directing Disposition of Sale Proceeds and Dismissal of Case

16  ("Stipulation")  The Stipulation provides, among other things, that the Debtor will transfer (i)

17  $50,000.00 to Atherton's bankruptcy counsel as a retainer to file a bankruptcy case for a related entity,

18  544 San Antonio Road LLC; and (ii) the balance of the Fund (which, on information and belief,

19  exceeds $3,000,000.00) to defendant PA One.  The Stipulation provides no information about

20  defendant PA One, or its claim or entitlement to the Fund, and it is not clear what relationship, if any,

21  there is between or among Atherton, Kirk, Gao, Sunshine, the other defendants, and PA One, as PA

22  One's name does not appear anywhere in the Debtor's schedules or elsewhere in this bankruptcy case.

23  The Bank is informed and believes and thereon alleges that PA One is a total stranger to the Atherton

24  bankruptcy estate, and the Debtor.  The Stipulation expressly states, without explanation, that neither

25  Kirk nor Gao will receive any portion of Atherton's remaining funds, and that Atherton's bankruptcy

26  case will be dismissed after final disbursements of the Fund to PA One.  [ECF Doc. No. 63.]

### The Bank's Pending Lawsuit Against Gao

28     20.     On December 24, 2014, the Bank filed a Complaint for Breach of Guaranty ("Gao

Complaint") against Gao in the California Superior Court for the County of Los Angeles ("State Court"), thereby commencing the case entitled Bank SinoPac v. Lucy Gao and assigned case number VC064502 ("State Court Action"). In the Gao Complaint, the Bank seeks a judgment against Gao in the principal amount of $2,799,656.25, plus interest, late charges, attorneys fees and costs of suit in sums according to proof. A true and correct copy of the Gao Complaint is attached hereto as Exhibit 2 and incorporated herein by reference.

21.    On February 27, 2015, the State Court entered Gao's default in the State Court Action due to Gao's failure to timely file a response to the Gao Complaint. A true and correct copy of the entered default in the State Court Action is attached hereto as Exhibit 3 and incorporated herein by reference. The Bank's request for entry of default judgment against Gao in the State Court Action in the amount of $2,799,656.25 was submitted on March 11, 2015, and is now pending before the State Court.

22.    The Bank filed its Objection to the Stipulation in Atherton's bankruptcy case on March 8, 2015. [ECF Doc. No. 65.]

23.    The Bank is informed and believes and thereon alleges that the Stipulation and the effort to transfer the Fund without explanation or backup is an attempted fraudulent transfer of the ownership interest in the Fund claimed by Gao, as to which the Debtor Atherton is either a conspirator, an aider and abetter, or both, which involves Debtor Atherton in a post-petition fraud on the Bank, which would establish the Bank as an administrative creditor of the estate.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief – Against All Defendants)

24.    The Bank incorporates the allegations in paragraphs 1-23 above as if fully set forth herein.

25.    Both (i) Schedule B-1 to Atherton's 2013 Form 1065, U.S. Federal Tax Return of Partnership Income dated as of August 14, 2014 ("2013 Atherton Tax Return"), and (ii) Gao's 2013 Schedule K-1 for Atherton ("2013 Gao/Atherton K-1"), state that Gao holds a 99% membership interest in Atherton. Based on a comparison of Kirk's signature on the Petition with the signature found on the 2013 Atherton Tax Return, the Bank is informed and believes and thereon alleges that

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  Kirk signed the 2013 Atherton Tax Return on Atherton's behalf, and confirmed that Gao was the 99%

2  owner of Atherton. A true and correct copy of the 2013 Atherton Tax Return and the 2013

3  Gao/Atherton K-1 (both redacted to exclude personal financial information) are attached hereto as

4  Exhibits 4 and 5 respectively and incorporated herein by reference.

5      26.    The Bank is informed and believes and thereon alleges that Gao is a party in interest to

6  the Fund, is the owner and holder of membership interests in Debtor Atherton, and is entitled to be

7  paid some or all of the Fund, and that Atherton and some or all of the other defendants have tried to

8  conceal those facts. By virtue of the Bank's claims against Gao, the Bank would and will be directly

9  harmed unless Gao's claims are recognized and the Fund is sequestered until that status is confirmed

10  and/or otherwise resolved.

11      27.    The Bank is informed and believes that the defendants other than Gao may dispute

12  Gao's and the Bank's claims to the Fund and to Gao's membership interests in the Debtor, and contend

13  that others are the owners and interest holders in Debtor Atherton, and that Debtor Atherton should be

14  entitled to transfer the Fund to PA One, or otherwise.

15      28.    The Bank desires a judicial determination at this time to determine the extent of the

16  interests of Gao and each of the other defendants in Debtor Atherton and the Fund, and alleges that

17  such a determination is necessary and appropriate at this time to avoid direct harm to the Bank.

18

19                    **SECOND CLAIM FOR RELIEF**

20                  **(Declaratory Relief – All Defendants)**

21      29.    The Bank incorporates the allegations in paragraphs 1-28 above as if fully set forth

22  herein.

23      30.    An actual controversy has arisen between the Bank, on the one hand, and the

24  Defendants, on the other hand, as to (i) whether Gao owns membership interests in Atherton, and (ii)

25  whether Atherton's transfer of the Fund to PA One pursuant to the Stipulation ("Transfer") would

26  involve Debtor Atherton in a post-petition tort under California law for its involvement in a fraudulent

27  transfer subject to avoidance by the Bank, making the Bank an administrative claimant in this

28  bankruptcy estate, either because Atherton is a conspirator in such fraudulent transfer, and/or is an

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  aider and abetter of such fraud under California law.

2      31.    The Bank is informed and believes and thereon alleges that Debtor Atherton and all of

3  the other Defendants (with the possible exception of Gao) dispute the foregoing.

4      32.    The Bank desires a judicial determination at this time to determine the foregoing, and

5  alleges that such a determination is necessary and appropriate at this time to avoid direct harm to the

6  Bank.

7

8  **THIRD CLAIM FOR RELIEF**

9  **(Declaratory Relief – All Defendants)**

10      33.    The Bank incorporates the allegations in paragraphs 1-32 above as if fully set forth

11  herein.

12      34.    An actual controversy has arisen between the Bank, on the one hand, and the

13  Defendants, on the other hand, as to whether Atherton has now become the constructive trustee of the

14  Fund for the benefit of the Bank, under <u>Weiner v. Roof,</u> 19 Cal. 2d 748 (1942), or otherwise, such that

15  Debtor Atherton must hold the Fund until this Court determines who is the actual interest holder or

16  holders in Atherton and/or the Fund entitled to make decisions about, direct the disposition of, and/or

17  receive, the Fund.

18      35.    The Bank is informed and believes and thereon alleges that Debtor Atherton and all of

19  the other Defendants dispute the foregoing.

20      36.    The Bank desires a judicial determination at this time to determine the foregoing, and

21  alleges that such a determination is necessary and appropriate at this time to avoid direct harm to the

22  Bank.

23

24  **FOURTH CLAIM FOR RELIEF**

25  **(Declaratory Relief – All Defendants)**

26      37.    The Bank incorporates the allegations in paragraphs 1-36 above as if fully set forth

27  herein.

28      38.    An actual controversy has arisen between the Bank, on the one hand, and the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    Defendants, on the other hand, that if, after a reasonable opportunity for further investigation and

2    discovery, it is determined that Gao's allegations in the Gao Adversary Proceeding and her Opposition

3    to the Dismissal Motion are true, the Bank will be able to show that:

4          (A)     Atherton is and at all relevant times was the *alter ego* of Gao because (i) Gao is

5    judicially estopped from denying that she owns Atherton since she asserted that she is Atherton's sole

6    owner in her Limited Opposition to the Dismissal Motion and in the Gao Adversary Proceeding; (ii)

7    there exists such a unity of ownership and interest between Atherton and Gao such that any

8    individuality and separateness between Atherton and Gao have ceased; (iii) Atherton is a mere shell,

9    instrumentality, and conduit dominated and controlled by Gao through which Gao carried on her

10    business; and (iv) adherence to the fiction of the separate existence of Atherton as an entity distinct

11    from Gao would permit an abuse of the corporate privilege and would promote injustice;

12          (B)     any transfer by Atherton is in effect a transfer by Gao because Atherton is Gao's *alter*

13    *ego* and/or because the Transfer is in effect a transfer by Gao of her entitlement to Atherton's

14    remaining funds as Atherton's sole member;

15          (C)     some or all of the Defendants have engaged in a conspiracy to defraud the Bank

16    through the Stipulation and the Transfer and/or that some or all of the Defendants have aided and

17    abetted Atherton and/or Gao in the commission of the Stipulation and the Transfer;

18          (D)     the Transfer is proposed, and would be made, with actual intent to hinder, delay, or

19    defraud the Bank, a creditor of Gao; and/or

20          (E)     Gao and/or her alleged *alter ego* Atherton would not receive a reasonably equivalent

21    value in exchange for the Transfer and that Gao either (i) was engaged or was about to engage in a

22    business or a transaction for which Gao's remaining assets were unreasonably small in relation to the

23    business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that

24    she would incur, debts beyond her ability to pay as they became due.

25        39.     Based on the foregoing, the Bank is informed and believes and thereon alleges that any

26    transfer of the Fund prior to the resolution of these matters would (i) immediately harm the Bank and

27    (ii) constitute a fraudulent transfer subject to avoidance by the Bank.

28        40.     The Bank is informed and believes and thereon alleges that the Defendants dispute one

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  or more of the Bank's contentions in this regard.

2      41.    The Bank desires a judicial determination as to whether the Transfer and the

3  Stipulation would be a fraudulent transfer subject to avoidance by the Bank, and such a determination

4  is necessary and appropriate at this time.

5

6                          **FIFTH CLAIM FOR RELIEF**

7                        **(Declaratory Relief – All Defendants)**

8      42.    The Bank incorporates the allegations in paragraphs 1-41 above as if fully set forth

9  herein.

10     43.    An actual controversy has arisen between the Bank, on the one hand, and the

11  Defendants, on the other hand, with respect to which, if given a reasonable opportunity for further

12  investigation or discovery, the Bank believes that it will be able to show that, alternatively:

13     (A)    Gao, sometime in 2014 prior to the Petition Date, transferred some or all of her

14  membership interest in Atherton to Kirk, Great Vista, American REO, Sunshine Valley and/or

15  Washington Capital with actual intent to hinder, delay, or defraud the Bank, a creditor of Gao, or

16     (B)    Gao transferred some or all of her membership interest in Atherton to Kirk, Great

17  Vista, American REO, Sunshine Valley and/or Washington Capital without receiving a reasonably

18  equivalent value in exchange for the transfer and while Gao either (i) was engaged or was about to

19  engage in a business or a transaction for which Gao's remaining assets were unreasonably small in

20  relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have

21  believed that she would incur, debts beyond her ability to pay as they became due.

22     44.    By reason of the foregoing, the Bank is informed and believes and thereon alleges that

23  the Bank may avoid Gao's transfer of any portion of her membership interest in Atherton to Kirk,

24  Great Vista, American REO, Sunshine Valley and/or Washington Capital pursuant to California Civil

25  Code section 3439, *et seq.*, thereby restoring Gao to full control over Atherton and the bankruptcy

26  estate with full power to direct the disposition and transfer of the Fund.

27     45.    The Bank is informed and believes and thereon alleges that the Defendants dispute one

28  or more of the Bank's contentions in this regard.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1777867.3 | 100158-0032                    10

46.    The Bank desires a judicial determination as to whether the transfer of the Gao ownership interest in Debtor Atherton, if any, was a fraudulent transfer subject to avoidance by the Bank, and such a determination is necessary and appropriate at this time.

## SIXTH CLAIM FOR RELIEF

### (Injunctive Relief – All Defendants)

47.    The Bank incorporates the allegations in paragraphs 1-46 above as if fully set forth herein.

48.    It is probable that the Court will determine that the any transfer of the Fund pursuant to the Stipulation, or otherwise prior to the determination of the matters asserted herein, would be a fraudulent transfer and a wrongful act by Atherton subject to avoidance by the Bank.

49.    The Bank will suffer irreparable harm if the transfers set forth in the Stipulation are permitted to occur, or if Atherton otherwise fraudulently transfers its remaining assets prior to a judicial determination of these matters, because PA One or another transferee may dissipate or further transfer Atherton's remaining funds, thereby placing such funds beyond the Bank's reach in the Bank's capacity as a creditor of Gao.

50.    In determining whether to enjoin the transfers set forth in the Stipulation pending the Court's disposition of this action, the balance of harms favors the Bank because (other than a desire on some or all of the defendants' part to defraud the Bank) there is no need for Gao and/or Atherton to transfer the Fund until such time as these matters are judicially resolved.

## PRAYER FOR RELIEF

**WHEREFORE**, the Bank prays for judgment as follows:

**ON THE FIRST CLAIM FOR RELIEF:**

For a judgment determining that Gao is the owner and holder of all of the membership interests in Debtor Atherton, and is solely entitled to the Fund in her capacity as the sole member of Debtor Atherton, subject to the Bank's claims against Gao.

**ON THE SECOND CLAIM FOR RELIEF:**

For a judgment determining that the Transfer would involve Atherton in a post-petition

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  fraudulent transfer subject to avoidance by the Bank, either as a principal or a conspirator in such

2  fraudulent transfer, and/or as an aider and abetter of such fraud, thereby making the Bank an

3  administrative claimant of Atherton's bankruptcy estate.

4  **ON THE THIRD CLAIM FOR RELIEF:**

5  For a judgment determining that Atherton has become a constructive trustee of the Fund for

6  the benefit of the Bank, such that Atherton must hold the Fund until this Court determines who is the

7  actual interest holder in Atherton and/or the Fund entitled to direct the disposition of, and/or to

8  receive, the Fund.

9  **ON THE FOURTH CLAIM FOR RELIEF:**

10  For a judgment determining that (i) Atherton is and at all relevant times was the *alter ego* of

11  Gao; (ii) any transfer by Atherton would in effect be a transfer by Gao; and (iii) the Transfer would

12  be a fraudulent transfer subject to avoidance by the Bank.

13  **ON THE FIFTH CLAIM FOR RELIEF:**

14  For a judgment determining that any transfer of the Gao ownership interest in Atherton to

15  Kirk, Great Vista, American REO, Sunshine Valley, and/or Washington Capital was a fraudulent

16  transfer subject to avoidance by the Bank.

17  **ON THE SIXTH CLAIM FOR RELIEF:**

18  1.    For issuance of an order to show cause commanding the Defendants to appear at a time

19  and place certain to show cause, if any, why the Court should not issue a Temporary Restraining

20  Order enjoining the Transfer of the Fund and/or any other transfer of Atherton's remaining funds

21  pending an evidentiary hearing on the Bank's Application for Preliminary Injunction.

22  2.    For issuance, after notice and a hearing, of a Preliminary Injunction enjoining the

23  Transfer or any other transfer of Atherton's remaining funds pending the Court's disposition of this

24  action and determination of the nature and extent of Gao's claimed ownership interest in Atherton

25  and/or the Fund.

26  **ON ALL CLAIMS FOR RELIEF:**

27  For such other and further relief as the Court deems just and proper.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  DATED: March 17, 2015          FRANDZEL ROBINS BLOOM & CSATO, L.C.

2

3                                  By:/s/ Michael Gerard Fletcher
                                      Michael Gerard Fletcher
4                                     Attorneys for Plaintiff BANK SINOPAC LOS
                                      ANGELES BRANCH
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

### United States Bankruptcy Court
#### Central District of California

In re    Atherton Financial Building LLC             Case No. _____

                           Debtor            Chapter _____ 11 _____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| American REO Solutions LLC<br>2804 Gateway Oaks Drive #200<br>Sacramento, CA 95833 | Membership | 20% | |
| Great Vista Real Estate Invest Corp<br>250 Selby Lane<br>Atherton, CA 94027 | Membership | 40% | |
| Sunshine Valley LLC<br>Attn: Benjamin Kirk<br>2648 E WORKMAN AVE STE 238<br>West Covina, CA 91790 | Membership | 20% | |
| Washington Capital Management LLC<br>2804 Gateway Oaks Drive #200<br>Sacramento, CA 95833 | Membership | 20% | |

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

     I, the Managing Member of Manager Sunshine Valley LLC of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date___ **September 9, 2014** _____        Signature _____

                                        **Benjamin Kirk**
                                        **Managing Member of Manager Sunshine Valley LLC**

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

   **0**    continuation sheets attached to List of Equity Security Holders

# EXHIBIT 2

1  Michael Gerard Fletcher (State Bar No. 070849)
   mfletcher@frandzel.com
2  Marshall J. August (State Bar No. 105361)
   maugust@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard
4  Seventeenth Floor
   Los Angeles, California  90048-4920
5  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
6
7  Attorneys for Plaintiff, BANK SINOPAC

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 24 2014

Sherri R. Carter, Executive Officer/Clerk
By Beatriz Gonzalez, Deputy

8              **SUPERIOR COURT OF CALIFORNIA**

9        **COUNTY OF LOS ANGELES, SOUTHEAST DISTRICT**

10

11  BANK SINOPAC,                          CASE No. **VC064502**

12              Plaintiff,                  **COMPLAINT FOR BREACH OF GUARANTY**

13  v.

14  LUCY GAO; and DOES 1 through 25,
    Inclusive,
15
                Defendants.
16

17

18      Plaintiff, Bank Sinopac alleges as follows:

19              **FIRST CAUSE OF ACTION**

20        **(For Breach of Guaranty as Against Lucy Gao**

21              **and Does 1 through 25, Inclusive)**

22      1.      At all times herein mentioned, Plaintiff BANK SINOPAC ("the Bank" or

23  "Plaintiff") was and still is a bank duly organized and existing under and by virtue of the laws of

24  the Republic of China (Taiwan) and duly qualified and authorized to conduct business in the State

25  of California as a bank.  The Bank is exempt from the usury provisions of Article XV, Section 1 of

26  the California Constitution.

27      2.      The Bank is informed and believes and thereon alleges that Defendant LUCY GAO

28  ("Gao") is an individual whose primary residence is in the County of Los Angeles.

1667232.1 | 100158-0032                    1

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA, 90048-4920
(323) 852-1000

3.    This Court is the proper Court for the trial of this action because the obligations sued upon herein were entered into, incurred and payable in the County of Los Angeles.

4.    Plaintiff does not know the true names or capacities of Does 1 through 25, inclusive, and sues these Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible for and caused the damages herein alleged. When Plaintiff ascertains the true names and capacities of Does 1 through 25, inclusive, it will amend its Complaint accordingly.

5.    Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant named in the caption of this Complaint was, and is, the agent, servant and/or employee of each of the other Defendants and that all the things alleged to have been done by each Defendant were done in the capacity of and as agent of the other Defendants.

6.    The within action is not subject to the provisions of Section 1801 et seq. or Section 2981 et seq. of the Civil Code of the State of California.

7.    On or about August 18, 2013, Liberty CMC Corporation ("Liberty") executed and delivered to the Bank a Business Loan Agreement. The Business Loan Agreement provided, among other things, that the Bank would make certain loans and other financial accommodations to Liberty. A true and correct copy of the Business Loan Agreement is attached hereto as Exhibit "1" and incorporated herein by this reference.

8.    In connection with the Business Loan Agreement, on or about August 18, 2013, Liberty executed and delivered to the Bank a Promissory Note ("Note") in the sum of $3,300,000.00. Pursuant to the terms of the Note, the Bank lent to Liberty the sum of $3,300,000.00. A true and correct copy of the Note is attached hereto as Exhibit "2" and incorporated herein by this reference.

9.    The Note provides that Liberty will make regular monthly payments of accrued and unpaid interest beginning on September 1, 2013, with the entire unpaid balance of principal and interest due on the Note's maturity date of June 30, 2014. The Note further provides that interest will accrue at the Bank's prime rate plus one-half a percent ("the Note Rate"). The Note further provides that if a default occurs under the terms of the Note the interest rate will increase to 5%

1    over the Note Rate ("the Default Rate"). The Note further provides that if a payment is 11 days or

2    more late Liberty will be charged a late charge of 5% of the unpaid portion of the regularly

3    scheduled payment.

4         10.     Subsequent to the execution of the Note, on or about July 31, 2014, Liberty

5    executed and delivered to the Bank a Change in Terms Agreement which, among other things,

6    extended the maturity date of the Note from June 30, 2014, to August 31, 2014. A true and correct

7    copy of the Change in Terms Agreement is attached hereto as Exhibit "3" and incorporated herein

8    by this reference.

9         11.     In consideration for the Bank making the loan to Liberty as evidenced by the Note

10    and the Change in Terms Agreement, Gao executed and delivered to the Bank her Commercial

11    Guaranty dated August 18, 2013, obligating herself to pay all sums due and payable by Liberty to

12    the Bank plus interest, costs and expenses and attorneys fees incurred by the Bank in connection

13    with the Guaranty. A true and correct copy of the Guaranty is attached hereto as Exhibit "4" and

14    incorporated herein by this reference.

15         12.     Liberty defaulted under the terms of the Note by, among other things, failing to pay

16    the Note in full on its maturity date of August 31, 2014. As a result of the default by Liberty the

17    following sums are now due and payable under the terms of the Note:

18           a.      Principal in the sum of $2,799,656.25;

19           b.      Interest in a sum according to proof, including interest at the Default Rate

20                   since the maturity of the Note;

21           c.      Late charges, if any, in a sum according to proof;

22           d.      Costs and attorneys fees according to proof.

23         13.     Gao has failed to pay any sums pursuant to the terms of her Guaranty and the

24    following sums are now payable from Gao to the Bank:

25           a.      Principal in the sum of $2,799,656.25;

26           b.      Interest in a sum according to proof, including interest at the Default Rate

27                   since the maturity of the Note;

28           c.      Late charges, if any, in a sum according to proof;

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    d. Costs and attorneys fees according to proof.

2  14. The Guaranty provides that the Bank is entitled to reasonable attorneys fees and

3 costs incurred herein.

4  15. The Bank has duly performed all conditions precedent on its part required to be

5 performed pursuant to the terms of the Business Loan Agreement, the Note, the Change in Terms

6 Agreement and the Guaranty.

7  WHEREFORE, Plaintiff prays judgment against Defendant Lucy Gao and Does 1 through

8 25, Inclusive on its First Cause of Action as follows:

9  1. Principal in the sum of $2,799,656.25;

10  2. Interest in an amount according to proof, including interest at the Default Rate

11    since the maturity of the Note;

12  3. Late charges, if any, in a sum according to proof;

13  4. For reasonable attorneys fees according to proof;

14  5. For costs of suit incurred herein; and

15  6. For such other and further relief as the Court deems just and proper.

16

17 DATED: December 24, 2014  FRANDZEL ROBINS BLOOM & CSATO, L.C.

18         MICHAEL GERARD FLETCHER
          MARSHALL J. AUGUST

19

20         By:

21          MARSHALL J. AUGUST

22         Attorneys for Plaintiff, BANK SINOPAC LOS
          ANGELES BRANCH

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1667232.1 | 100158-0032     4

COMPLAINT FOR BREACH OF GUARANTY

1

## VERIFICATION

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3      I have read the foregoing COMPLAINT FOR BREACH OF GUARANTY and know its

4    contents.

5    ☐    I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

6

7    ☒    I am Senior Vice President & General Manager of Bank Sinopac, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

8

9        ☒    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

10        ☐    The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those

11              matters I believe them to be true.

12    ☐    I am one of the attorneys for Bank Sinopac, a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on

13    behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

14      Executed on December 22, 2014, at Los Angeles, California.

15      I declare under penalty of perjury under the laws of the State of California that the

16    foregoing is true and correct.

17

18

19     Thomas Kao                                    
Print Name of Signatory                  Signature

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1667232.1 | 100158-0032

COMPLAINT FOR BREACH OF GUARANTY

# EXHIBIT 1

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,300,000.00 | 08-18-2013 | 06-30-2014 | 50-050-284-7 | | | MD | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Liberty CMC Corporation (TIN: 45-3329014)
3218 E Holt Ave, Ste 101
West Covina, CA 91791

**Lender:** Bank SinoPac Los Angeles Branch
355 South Grand Avenue, Suite 4168
Los Angeles, CA 90071

THIS BUSINESS LOAN AGREEMENT dated August 18, 2013, is made and executed between Liberty CMC Corporation ("Borrower") and Bank SinoPac Los Angeles Branch ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of August 18, 2013, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Lucy Gao, CEO/Secretary of Liberty CMC Corporation. Her signature is required for each disbursement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 3218 E Holt Ave, Ste 101, West Covina, CA 91791. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing

**BUSINESS LOAN AGREEMENT**
**(Continued)**

statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than one-hundred-twenty (120) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, compiled by a certified public accountant satisfactory to Lender.

**Interim Statements.** As soon as available, but in no event later than 45 days after the end of each fiscal quarter, Borrower's balance sheet and profit and loss statement for the period ended, prepared by Borrower.

**Tax Returns.** As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by Borrower.

**Additional Requirements.**
(1) Guarantor is to provide annual tax return or extension within 30 days from filing date.
(2) Guarantor is to provide annual personal financial statement within 30 days prior to loan maturity.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Financial Covenants and Ratios.** Comply with the following covenants and ratios:

**Working Capital Requirements.** Borrower shall comply with the following working capital ratio requirements:

**Current Ratio.** Maintain a Current Ratio in excess of 1.000 to 1.000. The term "Current Ratio" means Borrower's total Current Assets divided by Borrower's total Current Liabilities.

**Tangible Net Worth Requirements.** Maintain a minimum Tangible Net Worth of not less than: $2,000,000.00.

**Additional Requirements.**
(1) Borrower is required to maintain profitable on pre-tax basis by fiscal year end.
(2) During the loan period, Borrower is required and agrees to be in compliance with cleanup period for at least consecutive 14 days prior to loan maturity.

Except as provided above, all computations made to determine compliance with the requirements contained in this paragraph shall be made in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct.

## BUSINESS LOAN AGREEMENT
### (Continued)

Loan No: 50-050-234-7    Page 3

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
| --- | --- |
| Lucy Gao | $3,300,000.00 |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for

**BUSINESS LOAN AGREEMENT**

Loan No: 50-050-234-7  (Continued)  Page 4

---

insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

    **Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and Indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

    **Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

    **Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

    **Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

    **Payment Default.** Borrower fails to make any payment when due under the Loan.

    **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

    **Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

    **Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

    **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

    **Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

    **Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

    **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

    **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

    **Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

    **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 50-050-234-7                                                                                      Page 5

Insecurity. Lender in good faith believes itself insecure.

Right to Cure. If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default: (1) cure the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

EFFECT OF AN EVENT OF DEFAULT. If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

JUDICIAL REFERENCE.
CLAIMS SUBJECT TO JUDICIAL REFERENCE AGREEMENT; CONDUCT OF REFEREE.  UPON A MOTION OR WRITTEN REQUEST, EITHER PARTY MAY ELECT TO HAVE ANY CONTROVERSY, DISPUTE OR CLAIM ARISING OUT OF OR IN CONNECTION WITH THE LOAN EVIDENCED BY THE NOTE OR ANY SECURITY FOR THE LOAN (HEREINAFTER "CLAIM"), OTHER THAN THE "EXCLUDED MATTERS" DESCRIBED BELOW, DETERMINED BY A CONSENSUAL GENERAL JUDICIAL REFERENCE (THE "REFERENCE") PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 ET SEQ., AS SUCH STATUTES MAY BE AMENDED OR MODIFIED FROM TIME TO TIME.  ANY PENDING ACTION RELATING TO ANY CLAIM AND EVERY CLAIM SHALL BE HEARD BY A SINGLE REFEREE WHO SHALL THEN TRY ALL ISSUES (INCLUDING ANY AND ALL QUESTIONS OF LAW AND QUESTIONS OF FACT RELATING THERETO), AND ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW AND REPORT A STATEMENT OF DECISION.  THE REFEREE'S STATEMENT OF DECISION WILL CONSTITUTE THE CONCLUSIVE DETERMINATION OF THE CLAIM. THE PARTIES AGREE THAT THE REFEREE SHALL HAVE THE POWER TO ISSUE ALL LEGAL AND EQUITABLE RELIEF APPROPRIATE UNDER THE CIRCUMSTANCES BEFORE HIM/HER.  THE PARTIES SHALL PROMPTLY AND DILIGENTLY COOPERATE WITH ONE ANOTHER AND THE REFEREE, AND SHALL PERFORM SUCH ACTS AS MAY BE NECESSARY TO OBTAIN PROMPT AND EXPEDITIOUS RESOLUTION OF ALL CLAIMS IN ACCORDANCE WITH THE TERMS OF THIS PARAGRAPH.  EITHER PARTY MAY FILE THE REFEREE'S FINDINGS, CONCLUSIONS AND STATEMENT WITH THE CLERK OR JUDGE OF ANY APPROPRIATE COURT, FILE A MOTION TO CONFIRM THE REFEREE'S REPORT AND HAVE JUDGMENT ENTERED THEREON.  IF THE REPORT IS DEEMED INCOMPLETE BY SUCH COURT, THE REFEREE MAY BE REQUIRED TO COMPLETE THE REPORT AND RESUBMIT IT. THE PARTIES WILL EACH HAVE SUCH RIGHTS TO ASSERT SUCH OBJECTIONS AS ARE SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 ET SEQ.  ALL PROCEEDINGS SHALL BE CLOSED TO THE PUBLIC AND SHALL BE CONFIDENTIAL, AND ALL RECORDS RELATING TO THE REFERENCE SHALL BE PERMANENTLY SEALED WHEN THE ORDER THEREON BECOMES FINAL.  "EXCLUDED MATTERS" AS REFERRED TO IN THIS PARAGRAPH MEANS A NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, EXERCISE OF SELF-HELP REMEDIES (INCLUDING, WITHOUT LIMITATION, SET-OFF), TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING, WITHOUT LIMITATION, WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS, AND MOTIONS FOR AND APPOINTMENTS OF RECEIVERS AND ALL MOTIONS, HEARINGS AND PROCEEDINGS IN CONNECTION WITH ANY OF THE FOREGOING.  THE EXERCISE BY ANY PARTY OF ANY MOTION OR PROCEEDING IN CONNECTION WITH ANY OF THE EXCLUDED MATTERS DOES NOT CONSTITUTE A WAIVER BY SUCH PARTY OF ITS RIGHT TO ELECT, OR ITS ELECTION, TO HAVE OTHER MATTERS DECIDED BY THE REFERENCE.

SELECTION OF REFEREE; POWERS. THE PARTIES SHALL SELECT A SINGLE NEUTRAL REFEREE (THE "REFEREE"), WHO SHALL BE A RETIRED JUDGE OR JUSTICE OF THE COURTS OF THE STATE OF CALIFORNIA, OR A FEDERAL COURT JUDGE, IN EACH CASE, WITH AT LEAST TEN YEARS OF JUDICIAL EXPERIENCE IN CIVIL MATTERS. THE REFEREE SHALL BE APPOINTED IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 (OR PURSUANT TO COMPARABLE PROVISIONS OF FEDERAL LAW IF THE DISPUTE FALLS WITHIN THE EXCLUSIVE JURISDICTION OF THE FEDERAL COURTS).  IF WITHIN TEN (10) DAYS AFTER THE REQUEST OR MOTION FOR THE REFERENCE, THE PARTIES CANNOT AGREE UPON A REFEREE, EITHER PARTY MAY REQUEST OR MOVE THAT THE REFEREE BE APPOINTED BY THE PRESIDING JUDGE OF THE SUPERIOR COURT OR OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA.  THE REFEREE SHALL DETERMINE ALL ISSUES RELATING TO THE APPLICABILITY, INTERPRETATION, LEGALITY AND ENFORCEABILITY OF THIS PARAGRAPH.

ADDITIONAL FEE.
Borrower is required to pay for the Lender's out-of-pocket expenses related to the closing of the subject facility, including but not limited to legal fee, appraisal fee, environmental assessment fee, escrow fee, title insurance and recording fee.

TITLE INSURANCE COVERAGE.
Title insurance coverage shall be no less than $3,000,000.00 on the property located at 415 Huntington Dr., San Marino, CA 91108 and $1,250,000.00 on the property located at 1595 East 17th St, Santa Ana, CA 92705.

OTHER CONDITIONS.
(1) The utilization of this line of credit is subject to satisfactory review of the appraisal report on two commercial buildings, San Marino Property and Santa Ana Property prior to September 30, 2013.
(2) The utilization of this line of credit is subject to the satisfactory review of the environmental report or environmental search on two commercial buildings located at 415 Huntington Dr., San Marino, CA and 1595 East 17th Street, Santa Ana, CA.
(3) In the event that Borrower requests reconveyance the lien on the property at 415 Huntington Drive, San Marino, CA, Borrower is required to pay the entire outstanding principal balance plus all accrued interest of this loan in full and this credit facility will be cancelled.
(4) In the event that Borrower requests reconveyance the lien on the property at 1595 East 17th Street, Santa Ana, CA, the commitment of this credit facility will be reduced by $1,250,000.00 or 65% of the subject property's sales price, whichever is higher. Borrower is further required to paydown the entire portion of the outstanding principal balance that has exceeded the reduced commitment amount prior to the issuance of reconveyance.
(5) No junior liens on both pledged properties without Lender's prior written consent.
(6) No junior liens on Borrower's assets without Lender's prior written consent.

CREDIT AMOUNT.
The final loan amount is subject to 65% LTV of the combined value on the two properties (415 Huntington Dr., San Marino and 1595 East 17th St, Santa Ana) or $3,300,000.00, whichever is lower.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

## BUSINESS LOAN AGREEMENT
### (Continued)

Loan No: 50-050-234-7                                                                                                          Page 6

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in

effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Liberty CMC Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Bank SinoPac Los Angeles Branch, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Liberty CMC Corporation in the principal amount of $3,300,000.00 dated August 18, 2013, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**Tangible Net Worth.** The words "Tangible Net Worth" mean Borrower's total assets excluding all intangible assets (i.e., goodwill, trademarks, patents, copyrights, organizational expenses, and similar intangible items, but including leaseholds and leasehold improvements) less total debt.

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 50-050-234-7                                                                                    Page 8

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO
ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED AUGUST 18, 2013.

BORROWER:

LIBERTY CMC CORPORATION

By: _____
    Lucy Gao, CEO/Secretary of Liberty CMC
    Corporation

LENDER:

BANK SINOPAC LOS ANGELES BRANCH

By: _____
    Authorized Signer

LASER PRO Lending, Ver. 5.60.03.005  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - CA  G:\Laserpro\CFI\LPL\C40.FC  TR-1099  PR-2

# EXHIBIT 2

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,300,000.00 | 08-18-2013 | 06-30-2014 | 60-050-234-7 | | | MD | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

| **Borrower:** | Liberty CMC Corporation (TIN: 45-3329014)<br>3218 E Holt Ave, Ste 101<br>West Covina, CA 91791 | **Lender:** | Bank SinoPac Los Angeles Branch<br>355 South Grand Avenue, Suite 4168<br>Los Angeles, CA 90071 |
|---|---|---|---|

---

**Principal Amount: $3,300,000.00**                                                                 Date of Note: **August 18, 2013**

**PROMISE TO PAY.** Liberty CMC Corporation ("Borrower") promises to pay to Bank SinoPac Los Angeles Branch ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Three Hundred Thousand & 00/100 Dollars ($3,300,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest due on June 30, 2014. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 1, 2013, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is Lender's Prime Rate (the "Index"). This is the rate Lender charges, or would charge, on 90-day unsecured loans to the most creditworthy corporate customers. This rate may or may not be the lowest rate available from Lender at any given time. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each time the prime rate changes. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.500 percentage points over the Index, resulting in an initial rate of 3.750%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank SinoPac Los Angeles Branch, 355 South Grand Avenue, Suite 4168 Los Angeles, CA 90071.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any

**PROMISSORY NOTE**
**(Continued)**

Loan No: 50-050-234-7                                                                                           Page 2

Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Change in Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated June 18, 2012, to a trustee in favor of Lender on real property described as "Real Property located at 415 Huntington Dr, San Marino, CA 91108" and located in Los Angeles County, State of California.

(B) an Assignment of All Rents to Lender on real property described as "Real Property located at 415 Huntington Dr, San Marino, CA 91108" and located in Los Angeles County, State of California.

(C) a Deed of Trust dated June 18, 2012, to a trustee in favor of Lender on real property described as "Real Property located at 1595 East 17th St, Santa Ana, CA 92705" and located in Orange County, State of California.

(D) an Assignment of All Rents to Lender on real property described as "Real Property located at 1595 East 17th St, Santa Ana, CA 92705" and located in Orange County, State of California.

(E) fixtures, inventory, chattel paper, accounts, equipment and general intangibles described in Commercial Security Agreements dated August 18, 2013.

LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note may be requested only in writing by Borrower or as provided in this paragraph. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Lucy Gao, CEO/Secretary of Liberty CMC Corporation. Her signature is required for each disbursement. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

JUDICIAL REFERENCE.
CLAIMS SUBJECT TO JUDICIAL REFERENCE AGREEMENT; CONDUCT OF REFEREE. UPON A MOTION OR WRITTEN REQUEST, EITHER PARTY MAY ELECT TO HAVE ANY CONTROVERSY, DISPUTE OR CLAIM ARISING OUT OF OR IN CONNECTION WITH THE LOAN EVIDENCED BY THE NOTE OR ANY SECURITY FOR THE LOAN (HEREINAFTER "CLAIM"), OTHER THAN THE "EXCLUDED MATTERS" DESCRIBED BELOW, DETERMINED BY A CONSENSUAL GENERAL JUDICIAL REFERENCE (THE "REFERENCE") PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 ET SEQ., AS SUCH STATUTES MAY BE AMENDED OR MODIFIED FROM TIME TO TIME. ANY PENDING ACTION RELATING TO ANY CLAIM AND EVERY CLAIM SHALL BE HEARD BY A SINGLE REFEREE WHO SHALL THEN TRY ALL ISSUES (INCLUDING ANY AND ALL QUESTIONS OF LAW AND QUESTIONS OF FACT RELATING THERETO), AND ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW AND REPORT A STATEMENT OF DECISION. THE REFEREE'S STATEMENT OF DECISION WILL CONSTITUTE THE CONCLUSIVE DETERMINATION OF THE CLAIM. THE PARTIES AGREE THAT THE REFEREE SHALL HAVE THE POWER TO ISSUE ALL LEGAL AND EQUITABLE RELIEF APPROPRIATE UNDER THE CIRCUMSTANCES BEFORE HIM/HER. THE PARTIES SHALL PROMPTLY AND DILIGENTLY COOPERATE WITH ONE ANOTHER AND THE REFEREE, AND SHALL PERFORM SUCH ACTS AS MAY BE NECESSARY TO OBTAIN PROMPT AND EXPEDITIOUS RESOLUTION OF ALL CLAIMS IN ACCORDANCE WITH THE TERMS OF THIS PARAGRAPH. EITHER PARTY MAY FILE THE REFEREE'S FINDINGS, CONCLUSIONS AND STATEMENT WITH THE CLERK OR JUDGE OF ANY APPROPRIATE COURT, FILE A MOTION TO CONFIRM THE REFEREE'S REPORT AND HAVE JUDGMENT ENTERED THEREON. IF THE REPORT IS DEEMED INCOMPLETE BY SUCH COURT, THE REFEREE MAY BE REQUIRED TO COMPLETE THE REPORT AND RESUBMIT IT. THE PARTIES WILL EACH HAVE SUCH RIGHTS TO ASSERT SUCH OBJECTIONS AS ARE SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 ET SEQ. ALL PROCEEDINGS SHALL BE CLOSED TO THE PUBLIC AND SHALL BE CONFIDENTIAL, AND ALL RECORDS RELATING TO THE REFERENCE SHALL BE PERMANENTLY SEALED WHEN THE ORDER THEREON BECOMES FINAL. "EXCLUDED MATTERS" AS REFERRED TO IN THIS PARAGRAPH MEANS A NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, EXERCISE OF

# PROMISSORY NOTE
## (Continued)

Loan No: 50-050-234-7

Page 3

SELF-HELP REMEDIES (INCLUDING, WITHOUT LIMITATION, SET-OFF), TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING, WITHOUT LIMITATION, WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS, AND MOTIONS FOR AND APPOINTMENTS OF RECEIVERS AND ALL MOTIONS, HEARINGS AND PROCEEDINGS IN CONNECTION WITH ANY OF THE FOREGOING. THE EXERCISE BY ANY PARTY OF ANY MOTION OR PROCEEDING IN CONNECTION WITH ANY OF THE EXCLUDED MATTERS DOES NOT CONSTITUTE A WAIVER BY SUCH PARTY OF ITS RIGHT TO ELECT, OR ITS ELECTION, TO HAVE OTHER MATTERS DECIDED BY THE REFERENCE.

SELECTION OF REFEREE; POWERS. THE PARTIES SHALL SELECT A SINGLE NEUTRAL REFEREE (THE "REFEREE"), WHO SHALL BE A RETIRED JUDGE OR JUSTICE OF THE COURTS OF THE STATE OF CALIFORNIA, OR A FEDERAL COURT JUDGE, IN EACH CASE, WITH AT LEAST TEN YEARS OF JUDICIAL EXPERIENCE IN CIVIL MATTERS. THE REFEREE SHALL BE APPOINTED IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 (OR PURSUANT TO COMPARABLE PROVISIONS OF FEDERAL LAW IF THE DISPUTE FALLS WITHIN THE EXCLUSIVE JURISDICTION OF THE FEDERAL COURTS). IF WITHIN TEN (10) DAYS AFTER THE REQUEST OR MOTION FOR THE REFERENCE, THE PARTIES CANNOT AGREE UPON A REFEREE, EITHER PARTY MAY REQUEST OR MOVE THAT THE REFEREE BE APPOINTED BY THE PRESIDING JUDGE OF THE SUPERIOR COURT OR OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA. THE REFEREE SHALL DETERMINE ALL ISSUES RELATING TO THE APPLICABILITY, INTERPRETATION, LEGALITY AND ENFORCEABILITY OF THIS PARAGRAPH.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Bank SinoPac Los Angeles Branch 355 South Grand Avenue, Suite 4168 Los Angeles, CA 90071.

GENERAL PROVISIONS. This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

LIBERTY CMC CORPORATION

By: _____
Lucy    Gao,    CEO/Secretary    of    Liberty    CMC
Corporation

LASER PRO Lending, Ver. 5.60.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - CA  G:\Laspro\CFI\LPL\D30.FC  TR-1038  PR-2

# EXHIBIT 3

# CHANGE IN TERMS AGREEMENT

| Principal $3,300,000.00 | Loan Date 08-18-2013 | Maturity 08-31-2014 | Loan No 50-050-234-7 | Call / Coll | Account | Officer MD | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Liberty CMC Corporation (TIN: 45-3329014)
3218 E Holt Ave, Ste 101
West Covina, CA 91791

**Lender:** Bank SinoPac Los Angeles Branch
355 South Grand Avenue, Suite 4168
Los Angeles, CA 90071

---

**Principal Amount: $3,300,000.00**                                    **Date of Agreement: July 31, 2014**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**
THE ORIGINAL PROMISSORY NOTE IN THE AMOUNT OF US $3,300,000.00 WAS ESTABLISHED ON AUGUST 18, 2013 WITH EXPIRATION DATE ON JUNE 30, 2014.

**DESCRIPTION OF COLLATERAL.**
(A) DEED OF TRUST DATED JUNE 18, 2012 ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 415 HUNTINGTON DR., SAN MARINO, CA 91108" AND LOCATED IN LOS ANGELES COUNTY, STATE OF CALIFORNIA.
(B) AN ASSIGNMENT OF ALL RENTS ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 415 HUNTINGTON DR., SAN MARINO, CA 91108" AND LOCATED IN LOS ANGELES COUNTY, STATE OF CALIFORNIA.
(C) DEED OF TRUST DATED JUNE 18, 2012 ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 1595 EAST 17TH ST, SANTA ANA, CA 92705" AND LOCATED IN ORANGE COUNTY, STATE OF CALIFORNIA.
(D) AN ASSIGNMENT OF ALL RENTS ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 1595 EAST 17TH ST, SANTA ANA, CA 92705" AND LOCATED IN ORANGE COUNTY, STATE OF CALIFORNIA.
(E) FIXTURES, INVENTORY, CHATTEL PAPER, ACCOUNTS, EQUIPMENT AND GENERAL INTANGIBLES AS DEFINED IN THE COMMERCIAL SECURITY AGREEMENT DATED AUGUST 18, 2013.

**DESCRIPTION OF CHANGE IN TERMS.**
(1) TO EXTEND THE CURRENT PROMISSORY NOTE MATURITY DATE FROM JUNE 30, 2014 TO AUGUST 31, 2014.
(2) AN EXTENSION FEE OF $1,000.00 IS TO BE COLLECTED PRIOR TO LOAN FUNDING.
(3) ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGE.

**PROMISE TO PAY.** Liberty CMC Corporation ("Borrower") promises to pay to Bank SinoPac Los Angeles Branch ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Three Hundred Thousand & 00/100 Dollars ($3,300,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on August 31, 2014. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 1, 2013, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an index which is Lender's Prime Rate (the "Index"). This is the rate Lender charges, or would charge, on 90-day unsecured loans to the most creditworthy corporate customers. This rate may or may not be the lowest rate available from Lender at any given time. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each time the prime rate changes. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.500 percentage points over the Index, resulting in an initial rate of 3.750%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Bank SinoPac Los Angeles Branch, 355 South Grand Avenue, Suite 4168 Los Angeles, CA 90071.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this loan shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Any guarantor or Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or

# CHANGE IN TERMS AGREEMENT
**(Continued)**

Borrower's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Indebtedness.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by
(A) DEED OF TRUST DATED JUNE 18, 2012 ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 415 HUNTINGTON DR., SAN MARINO, CA 91108" AND LOCATED IN LOS ANGELES COUNTY, STATE OF CALIFORNIA.
(B) AN ASSIGNMENT OF ALL RENTS ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 415 HUNTINGTON DR., SAN MARINO, CA 91108" AND LOCATED IN LOS ANGELES COUNTY, STATE OF CALIFORNIA.
(C) DEED OF TRUST DATED JUNE 18, 2012 ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 1595 EAST 17TH ST, SANTA ANA, CA 92705" AND LOCATED IN ORANGE COUNTY, STATE OF CALIFORNIA.
(D) AN ASSIGNMENT OF ALL RENTS ON REAL PROPERTY DESCRIBED AS "REAL PROPERTY LOCATED AT 1595 EAST 17TH ST, SANTA ANA, CA 92705" AND LOCATED IN ORANGE COUNTY, STATE OF CALIFORNIA.
(E) FIXTURES, INVENTORY, CHATTEL PAPER, ACCOUNTS, EQUIPMENT AND GENERAL INTANGIBLES AS DEFINED IN THE COMMERCIAL SECURITY AGREEMENT DATED AUGUST 18, 2013.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement may be requested only in writing by Borrower or as provided in this paragraph. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Lucy Gao, CEO/Secretary of Liberty CMC Corporation. Her signature is required for each disbursement. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 50-050-234-7                                                                            Page 3

not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank SinoPac Los Angeles Branch 355 South Grand Avenue, Suite 4168 Los Angeles, CA 90071.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

LIBERTY CMC CORPORATION

By: _____
     Lucy Qao, CEO/Secretary of Liberty CMC
     Corporation

**LENDER:**

**BANK SINOPAC LOS ANGELES BRANCH**

X_____
    Authorized Signer

LASER PRO Lending, Ver. 14.2.0.021 Copr. D+H USA Corporation 1997, 2014.   All Rights Reserved.   - CA  G:\Laserpro\CFI\LPL\D30C.FC  TR-1036  PR-2

# EXHIBIT 4

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | MP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Liberty CMC Corporation (TIN: 45-3329014)
3218 E Holt Ave, Ste 101
West Covina, CA 91791

**Lender:** Bank SinoPac Los Angeles Branch
355 South Grand Avenue, Suite 4168
Los Angeles, CA 90071

**Guarantor:** Lucy Gao
1001 East Road
La Habra Heights, CA 90631

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty will not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. This Guaranty covers a revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of the Indebtedness. Guarantor specifically acknowledges and agrees that fluctuations in the amount of the Indebtedness, even to zero dollars ($ 0.00), shall not constitute a termination of this Guaranty. Guarantor's liability under this Guaranty shall terminate only upon (A) termination in writing by Borrower and Lender of the line of credit, (B) payment of the Indebtedness in full in legal tender, and (C) payment in full in legal tender of all of Guarantor's other obligations under this Guaranty.

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Tax Returns.** As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period

# COMMERCIAL GUARANTY
**(Continued)**

ended, Guarantor's Federal and other governmental tax returns, prepared by Guarantor.

**Additional Requirements.**
Guarantor is to provide annual personal financial statement within 30 days prior to loan maturity.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B) proceed against any person, including Borrower, before proceeding against Guarantor; (C) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Guarantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice of the terms, time, and place of any sale of the collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Indebtedness, the Borrower, the collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (H) any disability or other defense of Borrower, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Guarantor and Lender; (K) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (L) any statute of limitations in any action under this Guaranty or on the Indebtedness; or (M) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Guarantor waives all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and any defenses arising out of an election of remedies by Lender even though that the election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Guarantor waives all rights and defenses that Guarantor may have because Borrower's obligation is secured by real property. This means among other things: (N) Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower. (O) If Lender forecloses on any real property collateral pledged by Borrower: (1) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (2) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Guarantor acknowledges that Guarantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Borrower or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**Guarantor's Understanding With Respect To Waivers.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**Subordination of Borrower's Debts to Guarantor.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Guaranty:

**AMENDMENTS.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ATTORNEYS' FEES; EXPENSES.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**CAPTION HEADINGS.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the

## COMMERCIAL GUARANTY
### (Continued)

provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.

**CHOICE OF VENUE.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**INTEGRATION.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**INTERPRETATION.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**NOTICES.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**WAIVE JURY.** To the extent permitted by applicable law, Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**Definitions.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**BORROWER.** The word "Borrower" means Liberty CMC Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**GUARANTOR.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Lucy Gao, and in each case, any signer's successors and assigns.

**GUARANTY.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**INDEBTEDNESS.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**LENDER.** The word "Lender" means Bank SinoPac Los Angeles Branch, its successors and assigns.

**NOTE.** The word "Note" means the promissory note dated August 16, 2013, in the original principal amount of $3,300,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 50-050-234-7                                                    Page 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED AUGUST 18, 2013.

GUARANTOR:

X
Lucy Gao

LASER PRO Lending, Ver. 5.60.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2013.   All Rights Reserved.   - CA  G:\Laserpro\CFI\LPL\E20.FC  TR-1026  PR-2

# EXHIBIT 3

CIV-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Michael Gerard Fletcher (State Bar #070849)
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90048-4920
TELEPHONE NO.: (323) 852-1000     FAX NO. *(Optional):* (323) 651-2577
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Bank Sinopac

**FILED** Dup
Superior Court Of California
County of Los Angeles

FEB 27 2015

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Robin Jones

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 12720 Norwalk Boulevard
MAILING ADDRESS: 12720 Norwalk Boulevard
CITY AND ZIP CODE: Norwalk, CA 90650
BRANCH NAME: Southeast District

PLAINTIFF/PETITIONER: BANK SINOPAC,

DEFENDANT/RESPONDENT: LUCY GAO

| **REQUEST FOR** (Application) | ☒ Entry of Default | ☐ Clerk's Judgment | CASE NUMBER: |
|---|---|---|---|
| | ☐ Court Judgment | | VC064502 |

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on *(date):* December 24, 2014
   b. by *(name):* BANK SINOPAC
   c. ☒ Enter default of defendant *(names):* LUCY GAO

   d. ☐ I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant *(names):*

      *(Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)*

   e. ☐ Enter clerk's judgment
      (1) ☐ for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         ☐ Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) ☐ under Code of Civil Procedure section 585(a). *(Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)*
      (3) ☐ for default previously entered on *(date):*

2. Judgment to be entered.

| | | Amount | Credits acknowledged | Balance |
|---|---|---|---|---|
| a. | Demand of complaint.............................$ | $ | $ | |
| b. | Statement of damages * | | | |
| | (1) Special ...........................................$ | $ | $ | |
| | (2) General ...........................................$ | $ | $ | |
| c. | Interest.................................................$ | $ | $ | |
| d. | Costs *(see reverse)* ..............................$ | $ | $ | |
| e. | Attorney fees .......................................$ | $ | $ | |
| f. | TOTALS ...............................................$ | $ | $ | |
| g. | **Daily damages** were demanded in complaint at the rate of: $ | per day beginning *(date):* | | |

   (* Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)

3. ☐ *(Check if filed in an unlawful detainer case)* Legal document assistant or unlawful detainer assistant information is on the reverse *(complete item 4).*

Date: February 27, 2015

MICHAEL GERARD FLETCHER
_____          ▶ _____
(TYPE OR PRINT NAME)                         (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

| FOR COURT USE ONLY | (1) ☑ Default entered as requested on *(date):* |
|---|---|
| | (2) ☐ Default NOT entered as requested *(state reason):* |
| | Clerk, by _____, Deputy |

SHERRI R. CARTER   FEB 27 2015   R. JONES

| Form Adopted for Mandatory Use Judicial Council of California CIV-100 [Rev. January 1, 2007] | **REQUEST FOR ENTRY OF DEFAULT** (Application to Enter Default) | American LegalNet, Inc. www.FormsWorkflow.com | Page 1 of 2 Code of Civil Procedure, §§ 585–87, 1169 www.courtinfo.ca.gov |
|---|---|---|---|

**CIV-100**

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER:  BANK SINOPAC | VC064502 |
| DEFENDANT/RESPONDENT:  LUCY GAO | |

4. **Legal document assistant or unlawful detainer assistant** (Bus. & Prof. Code, § 6400 et seq.). A legal document assistant or unlawful detainer assistant ☐ **did** ☐ **did not** for compensation give advice or assistance with this form. *(If declarant has received any help or advice for pay from a legal document assistant or unlawful detainer assistant, state):*

   a. Assistant's name:
   b. Street address, city, and zip code:

      c. Telephone no.:
      d. County of registration:
      e. Registration no.:
      f. Expires on *(date):*

5. ☒ **Declaration under Code of Civil Procedure Section 585.5** *(required for entry of default under Code Civ. Proc., § 585(a)).* This action

   a. ☐ is ☒ is not   on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act),

   b. ☐ is ☒ is not   on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).

   c. ☐ is ☒ is not   on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing** *(Code Civ. Proc., § 587).* A copy of this *Request for Entry of Default* was

   a. ☐ **not mailed** to the following defendants, whose addresses are **unknown** to plaintiff or plaintiff's attorney *(names):*

   b. ☒ **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:

      (1) Mailed on *(date):* February 27, 2015     (2) To *(specify names and addresses shown on the envelopes):*
      LUCY GAO
      1001 East Road
      LaHabra Heights, CA 90631

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.
Date: February 27, 2015

E. PANG
_____
(TYPE OR PRINT NAME)

▶ _____*E. Pang*_____
(SIGNATURE OF DECLARANT)

7. **Memorandum of costs** *(required if money judgment requested).* Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):

   a. Clerk's filing fees.............................$
   b. Process server's fees ......................$
   c. Other *(specify):*_____ $
   d. _____ $
   e. **TOTAL**.........................................$ _____

   f. ☐ Costs and disbursements are waived.

   g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DECLARANT)

8. ☒ **Declaration of nonmilitary status** *(required for a judgment).* No defendant named in item 1c of the application is in the military service so as to be entitled to the benefits of the Servicemembers Civil Relief Act (50 U.S.C. App. § 501 et seq.).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: February 27, 2015

MICHAEL GERARD FLETCHER
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DECLARANT)

Civ-100 [Rev. January 1, 2007]

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT 4

Form **1065**

Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2013, or tax year beginning _____ , ending _____

▶ Information about Form 1065 and its separate instructions is at *www.irs.gov/form1065*.

OMB No. 1545-0099

**2013**

| A  Principal business activity | | Name of partnership | | | D  Employer identification number |
|---|---|---|---|---|---|
| REAL ESTATE | | ATHERTON FINANCIAL BUILDING LLC | | | 3979 |
| B  Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see the instructions. | | | E  Date business started |
| | | 3592 ROSEMEAD BLVD SUITE 325 | | | |
| REAL ESTATE | | City or town          State          ZIP code | | | 6/30/2010 |
| C  Business code number | | ROSEMEAD          CA          91770 | | | F  Total assets (see the instructions) |
| 531390 | | Foreign country name     Foreign province/state/county     Foreign postal code | | | $          9,598,762 |

G   Check applicable boxes: **(1)** ☐ Initial return  **(2)** ☐ Final return  **(3)** ☐ Name change  **(4)** ☐ Address change  **(5)** ☐ Amended return
**(6)** ☐ Technical termination - also check (1) or (2)

H   Check accounting method: **(1)** ☐ Cash  **(2)** ☒ Accrual  **(3)** ☐ Other (specify) ▶ _____

I   Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ _____ 2

J   Check if Schedules C and M-3 are attached . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**Caution.** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales . . . . . . . . . . | 1a | | | | |
| | b | Returns and allowances . . . . . . . . . . | 1b | | | | |
| | c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . | | | 1c | | 0 |
| | 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . | | | 2 | | |
| | 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . | | | 3 | | 0 |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) . . . . | | | 4 | | |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) . . . . . . . . . | | | 5 | | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . | | | 6 | | |
| | 7 | Other income (loss) (attach statement) . . . . . . . . . . . . . | | | 7 | | |
| | 8 | **Total income (loss).** Combine lines 3 through 7 . . . . . . . . . . | | | 8 | | 0 |
| **Deductions** (see the instructions for limitations) | 9 | Salaries and wages (other than to partners) (less employment credits) . . . . . | | | 9 | | |
| | 10 | Guaranteed payments to partners . . . . . . . . . . . . . . | | | 10 | | |
| | 11 | Repairs and maintenance . . . . . . . . . . . . . . . . | | | 11 | | |
| | 12 | Bad debts . . . . . . . . . . . . . . . . . . . . | | | 12 | | |
| | 13 | Rent . . . . . . . . . . . . . . . . . . . . . . | | | 13 | | |
| | 14 | Taxes and licenses . . . . . . . . . . . . . . . . . . | | | 14 | | 825 |
| | 15 | Interest . . . . . . . . . . . . . . . . . . . . . | | | 15 | | |
| | 16a | Depreciation (if required, attach Form 4562) . . . . . . | 16a | | | | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return . . . | 16b | | 16c | | 0 |
| | 17 | Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . | | | 17 | | |
| | 18 | Retirement plans, etc. . . . . . . . . . . . . . . . . | | | 18 | | |
| | 19 | Employee benefit programs . . . . . . . . . . . . . . . | | | 19 | | |
| | 20 | Other deductions (attach statement) . . . . . . . . . . . . . | | | 20 | | |
| | 21 | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 . . . . . | | | 21 | | 825 |
| | 22 | **Ordinary business income (loss).** Subtract line 21 from line 8 . . . . . . | | | 22 | | -825 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

▶ _____
Signature of general partner or limited liability company member manager

_____
Date

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | NICK CHUI | | 8/14/2014 | | P00311307 |
| | Firm's name  ▶ A & N ACCOUNTING | | | Firm's EIN ▶ | 0616 |
| | Firm's address ▶ 1345 S DIAMOND BAR BLVD STE Z | | | Phone no. (909) 396-0081 | |
| | City   DIAMOND BAR | | State CA | ZIP code  91765 | |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2013)

HTA

Form 1065 (2013)   ATHERTON FINANCIAL BUILDING LLC                                    3979          Page **2**

## Schedule B    Other Information

| | | | | | | Yes | No |
|---|---|---|---|---|---|---|---|
| **1** | What type of entity is filing this return? Check the applicable box: | | | | | | |

| | | | |
|---|---|---|---|
| **a** | ☐ Domestic general partnership | **b** | ☐ Domestic limited partnership |
| **c** | ☒ Domestic limited liability company | **d** | ☐ Domestic limited liability partnership |
| **e** | ☐ Foreign partnership | **f** | ☐ Other ▶ |

| | | Yes | No |
|---|---|---|---|
| **2** | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? . . . . . . . . . . . . . . . . . . . . . . . . | X | |
| **3** | At the end of the tax year: | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . . | | X |
| **b** | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership . . . . . . . . . . . . . . . . | X | |
| **4** | At the end of the tax year, did the partnership: | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below . . . . . . . . . . . . . . . . . . . . . . . . | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below . . . . . | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| **5** | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| **6** | Does the partnership satisfy **all four** of the following conditions? | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | |
| **b** | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| **d** | The partnership is not filing and is not required to file Schedule M-3 . . . . . . . . . . . . . | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? . . . . . . . . . . . | | X |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? . . . . . . . . . . . . . . . . | | X |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? . . . . . . . . . . . . . . . . . . . . | | X |
| **10** | At any time during calendar year 2013, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) (formerly TD F 90-22.1). If "Yes," enter the name of the foreign country. ▶ | | X |

Form **1065** (2013)

Form 1065 (2013)    ATHERTON FINANCIAL BUILDING LLC    ████3979    Page **3**

| **Schedule B** | **Other Information** *(continued)* | Yes | No |
|---|---|---|---|

| | | Yes | No |
|---|---|---|---|
| **11** | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions . . . . . . . . . . . | | X |
| **12a** | Is the partnership making, or had it previously made (and not revoked), a section 754 election? . . . . . . . . . . | | X |
| | See instructions for details regarding a section 754 election. | | |
| **b** | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions . . . . . . . . | | X |
| **c** | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions. | | X |
| **13** | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly-owned by the partnership throughout the tax year) . . . . . . . . . . . . . . . ▶ ☐ | | |
| **14** | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| **15** | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions    ▶ | | |
| **16** | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership.    ▶    0 | | X |
| **17** | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| **18a** | Did you make any payments in 2013 that would require you to file Form(s) 1099? See instructions . . . . . . . . . | | X |
| **b** | If "Yes," did you or will you file required Form(s) 1099? . . . . . . . . . . . . . . . . . . . . . . | | |
| **19** | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| **20** | Enter the number of partners that are foreign governments under section 892.    ▶    0 | | |

**Designation of Tax Matters Partner** (see instructions)
Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP | ▶ LUCY GAO | Identifying number of TMP | ▶ ███-6559 |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative | ▶ | Phone number of TMP | (626) 214-2142 |
| Address of designated TMP | ▶ 1001 EAST ROAD | | |
| | LA HABRA HEIGHTS | CA | 90631 |

Form **1065** (2013)

**SCHEDULE B-1
(Form 1065)**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

# Information on Partners Owning 50% or More of the Partnership

► Attach to Form 1065. See instructions on back.

OMB No. 1545-0099

| Name of partnership | Employer Identification number (EIN) |
|---|---|
| ATHERTON FINANCIAL BUILDING LLC | ▬▬3979 |

**Part I**  Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II**  Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| LUCY GAO | ▬▬-6559 | United States | 99.000% |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.
HTA

Schedule B-1 (Form 1065) (Rev. 12-2011)

# EXHIBIT 5

651113

| | | | | |
|---|---|---|---|---|
| ☐ Final K-1 | | ☐ Amended K-1 | | OMB No. 1545-0099 |

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2013**

For calendar year 2013, or tax
year beginning _____, 2013
ending _____, 20 ___

**Partner's Share of Income, Deductions,
Credits, etc.** ► See back of form and separate instructions.

### Part I  Information About the Partnership

**A** Partnership's employer identification number
[ ]3979

**B** Partnership's name, address, city, state, and ZIP code

ATHERTON FINANCIAL BUILDING LLC
3592 ROSEMEAD BLVD SUITE 325
ROSEMEAD, CA 91770

**C** IRS Center where partnership filed return
Ogden, UT 84201-0011

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's identifying number        Partner: 1
[ ]-6559

**F** Partner's name, address, city, state, and ZIP code
LUCY GAO
1001 EAST ROAD
LA HABRA HEIGHTS, CA 90631

**G** ☐ General partner or LLC      ☒ Limited partner or other LLC
member-manager                member

**H** ☒ Domestic partner          ☐ Foreign partner

**I1** What type of entity is this partner?    Passive Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here
(see instructions) . . . . . . . . . . . . . . . . . ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 99.000000% | 99.000000% |
| Loss | 99.000000% | 99.000000% |
| Capital | 99.000000% | 99.000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse . . . . . . . . | $ | |
| Qualified nonrecourse financing . . . | $ | 5,205,273 |
| Recourse . . . . . . . . . . | $ | 4,367,345 |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account . . . . . . | $ | 260,841 |
| Capital contributed during the year . . | $ | |
| Current year increase (decrease) . . . | $ | -328,674 |
| Withdrawals & distributions . . . . . | $ ( | ) |
| Ending capital account . . . . . . . | $ | -67,833 |

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| **1** | Ordinary business income (loss) | **15** | Credits |
| | -817 | | |
| **2** | Net rental real estate income (loss) | | |
| | -327,857 | | |
| **3** | Other net rental income (loss) | **16** | Foreign transactions |
| **4** | Guaranteed payments | | |
| **5** | Interest income | | |
| **6a** | Ordinary dividends | | |
| **6b** | Qualified dividends | | |
| **7** | Royalties | | |
| **8** | Net short-term capital gain (loss) | | |
| **9a** | Net long-term capital gain (loss) | **17** | Alternative minimum tax (AMT) items |
| **9b** | Collectibles (28%) gain (loss) | | |
| **9c** | Unrecaptured section 1250 gain | | |
| **10** | Net section 1231 gain (loss) | **18** | Tax-exempt income and nondeductible expenses |
| **11** | Other income (loss) | | |
| | | **19** | Distributions |
| **12** | Section 179 deduction | | |
| **13** | Other deductions | | |
| | | **20** | Other Information |
| **14** | Self-employment earnings (loss) | | |

*See attached statement for additional information.

For IRS Use Only

IRS.gov/form1065

Schedule K-1 (Form 1065) 2013